UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| KAREN B. DONOVAN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Cause No. 1:09-cv-275-WTL-TAB |
| COURTNEY L. BISHOP, | ) | |
| Defendant. | ) | |

### ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

Before the Court are several motions for summary judgment – the Plaintiff's First Motion for Partial Summary Judgment (Docket No. 36), the Defendant's Motion for Summary Judgment (Docket No. 42), and the Plaintiff's Second Motion for Partial Summary Judgment (Docket No. 77). These motions are fully briefed, and the Court being duly advised, now **GRANTS** the Plaintiff's First Motion for Partial Summary Judgment, **DENIES** the Plaintiff's Second Partial Motion for Summary Judgment, and **GRANTS IN PART AND DENIES IN PART** the Defendant's Motion for Summary Judgment.[1]

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all

---

[1] Having ruled on the parties' motions for summary judgment, their motions for hearings (Docket Nos. 39 & 46) are now **DENIED AS MOOT**.

reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

The Plaintiff, Karen B. Donovan, is the great granddaughter of the legendary African American cyclist, Marshall W. "Major" Taylor. Major Taylor died intestate in Cook County, Illinois in 1932. He was survived by one daughter – Sydney Taylor Brown[2] – who died 2005. Sydney was survived by her son, Dallas C. Brown, Jr., who is the Plaintiff's father.

The Defendant, Courtney L. Bishop, owns two U.S. Trademark Registration Numbers – 2,701,247 (hereinafter "'247") and 2,791,896 (hereinafter "'896"). The '247 registration is for the mark "MAJOR TAYLOR" on "[f]inancial and insurance underwriting services pertaining to Fund Raising Associations, Foundations, Charitable not for profit organizations Covering activities held within the normal scope of operations for these organizations, namely fundraisers." Docket No. 43 at 3. The '896 registration is for the mark "MAJOR TAYLOR" on "[r]etail store and/or on-line computerized ordering services featuring bicycles, bicycle equipment, bicycle clothing, shoes, and apparel; Promoting bicycle sports, bicycle competitions

---

[2] Sydney Taylor Brown was also known as Rita Sydney Taylor Brown.

and/or events of other." *Id*. Bishop obtained the '247 mark in March 25, 2003 and the '896 mark on December 9, 2003. After registering the marks, Bishop used both of them commercially.

At the time he registered the marks Bishop did not know of any "other person, firm, corporation, or association" that had the right to use the MAJOR TAYLOR mark in commerce. *Id.* at 5. Although Bishop did not know of any other individual's use of the MAJOR TAYLOR mark, he did not obtain consent from Major Taylor's descendants prior to registering either the '247 or the '896 mark.

Donovan petitioned the Trademark Trial and Appeal Board ("TTAB") for cancellation of Bishop's marks. The TTAB dismissed her suit with prejudice and she filed this suit, which seeks cancellation of Bishop's marks as well as damages and an injunction for violation of the Indiana Rights of Publicity statute.

### III.  DISCUSSION

As an initial matter the Court notes that two of the outstanding motions for summary judgment (Docket Nos. 36 & 42) seek summary judgment on the Plaintiff's original Complaint. After these motions were filed, Donovan amended her Complaint to add two additional causes of action. However, because Donovan's amendment does not alter the other causes of action, the Court will treat both of these motions as against the Amended Complaint.

**A.    Count I – Cancellation based on fraud.**

Bishop moved for summary judgment on Count I. He alleges that because Donovan has not "proffer[ed] clear and convincing evidence of fraud," her claim must fail. Docket No. 43 at 8. Specifically, according to Bishop, "the only evidence before the Court concerning fraud . . .

are the sworn statements of the Defendant, which decidedly indicate a lack of fraud or any other inequitable conduct during his pursuit of the trademark registrations in question." *Id*. In response, Donovan contends that in order to obtain the '896 mark, "Bishop declared on October 25, 2000, under penalty of law, that no other person has the right to use the Major Taylor mark in commerce." Docket No. 45 at 9. In addition, in order to obtain the '247 mark, Bishop stated "on August 9, 2001 . . . that no other person has the right to use the Major Taylor mark in commerce." *Id*. Then, "on March 2, 2010, [Bishop stated] that he did not know that anyone else had the right to use the Major Taylor trademark when he submitted his applications for registration." *Id*. According to Donovan, these three statements were all false, and thus Bishop's trademarks should be cancelled.

Under 15 U.S.C. § 1064(3), "any person who believes that he is or will be damaged . . . by the registration of a mark on the principal register" can file a petition to cancel the mark's registration at any time if the mark's registration was obtained fraudulently. Recently, the Court of Appeals for the Federal Circuit explained that "'[f]raud in procuring a trademark registration . . . occurs when an applicant knowingly makes false, material representations of fact in connection with his application.'" *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quoting *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986)). "A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof." *Id*. (citation omitted). "'[T]he very nature of the charge of fraud requires that it be proven to the hilt with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party.'" *Id*. (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 U.S.P.Q. (BNA) 1033, 1044 (T.T.A.B. 1981)).

Because an applicant only has the duty to avoid making knowingly inaccurate or knowingly misleading statements, "absent the requisite intent to mislead the PTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation." *Id*. "[T]here is 'a material legal distinction between a false representation and a fraudulent one, the latter involving an intent to deceive, whereas the former may be occasioned by a misunderstanding, an inadvertence, a mere negligent omission, or the like.'" *Id*. (quoting *Kemin Indus., Inc. v. Watkins Prods., Inc.*, 192 U.S.P.Q. (BNA) 327, 329 (T.T.A.B. 1976)). "In other words, deception must be willful to constitute fraud." *Id*. "'[M]ere negligence is not sufficient to infer fraud or dishonesty.'" *Id*. at 1244 (quoting *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1582 (Fed. Cir. 1991)). Even gross negligence is not enough. *See id.* "Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis" and "'can be inferred from indirect and circumstantial evidence.'" *Id*. at 1245 (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,* 537 F.3d 1257, 1366 (Fed. Cir. 2008)). However, even the circumstantial evidence (or the indirect evidence for that matter) must be clear and convincing. "When drawing an inference of intent, 'the involved conduct, viewed in light of all the evidence . . . must indicate sufficient culpability to require a finding of intent to deceive.'" *Id*. (quoting *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988)).

Donovan spends five pages of her brief citing evidence, which purportedly shows that Bishop knew other individuals had the right to use the MAJOR TAYLOR trademarks. Unfortunately, none of Donovan's evidence establishes the critical fact – that Bishop knew that other individuals had the right to use the marks. At most, the evidence shows that Bishop knew

there were other individuals interested in Major Taylor and his achievements. This does not meet the stringent standard set forth in *Bose*. None of the evidence that Donovan cites establishes that Bishop made *knowingly* inaccurate statements to the TTAB. Although Bishop's statements in his trademark applications may have been false, because Donovan has not established that these statements were made with intent to deceive the TTAB, she has failed to establish the elements of fraud.

Although it is harsh, summary judgment is the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wis. Dep't of Corrs.*, 175 F.3d 497, 504 (7th Cir. 1999). Because Donovan has not introduced any evidence of fraud, the Defendant's motion for summary judgment is **GRANTED** as to Count I of the Amended Complaint.

**B. Count II – Cancellation based on illegality under Indiana law.**

Donovan's second cause of action alleges that Bishop's trademarks should be canceled "based upon illegality under Indiana state law." Specifically, Donovan cites the Indiana Rights of Publicity statute and claims that because Bishop's "adoption and commercial use . . . of the MAJOR TAYLOR trademarks was and is illegal," Am. Compl. ¶ 18, the trademarks should be cancelled. Although the Defendant purportedly moved for summary judgment on all of Donovan's claims, his brief does not discuss Count II. Indeed the only argument that is even marginally related to this claim is his statement that "[t]he Plaintiff's efforts to cancel the Defendant's trademark registrations should be placed in the proper context in view of the fact that she has . . . filed her own federal trademark applications to commercialize the name and likeness of the late Marshall W. 'Major' Taylor." Docket No. 43 at 11. This is not enough to

justify granting summary judgment in his favor. Accordingly, the Defendant's motion is **DENIED** as to Count II of the Amended Complaint.

### C. Count III – Cancellation based on illegality under 15 U.S.C. § 1052(a).

In Count III, Donovan alleges that Bishop's "use and registration of MAJOR TAYLOR trademarks falsely suggests a connection with Major Taylor. Accordingly, she claims that the use and registration of the MAJOR TAYLOR trademarks . . . is illegal pursuant to 15 U.S.C. § 1052(a)." Am. Compl. ¶ 21. Section 1052(a) provides: "No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it – (a) Consists of or comprises . . . matter which may . . . falsely suggest a connection with persons, living or dead."

The parties agree that the purpose of § 1052(a) is "to protect 'the name of an individual or institution which was not a technical trademark or trade name upon which an objection could be made under Section 2(d).'" *Lesley Hornby v. TJX Cos., Inc.*, 87 U.S.P.Q.2d (BNA) 1411, 1424 (T.T.A.B. 2008) (quoting *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., Inc.*, 703 F.3d 1372 (Fed. Cir. 1983)). "[T]his statutory section embraces the concepts of the right of privacy and the related right of publicity." *Id*. To succeed on a false suggestion of a connection claim, "the plaintiff must demonstrate that the name or equivalent thereof claimed to be appropriated by another must be unmistakably associated with a particular personality or 'persona' and must point uniquely to the plaintiff." *Id*. In *Buffett v. Chi-Chi's, Inc.*, 226 U.S.P.Q. (BNA) 428, 429 (T.T.A.B. 1985), the TTAB stated:

> [A] plaintiff asserting a claim that a mark falsely suggests a connection with persons, living or dead . . . [must] demonstrate (i) that the defendant's mark is the same or a close approximation of plaintiff's previously used name or identity; (ii) that the mark would be recognized as such; (iii) that the plaintiff is not connected

7

with the activities performed by the defendant under the mark; and (iv) that the plaintiff's name or identity is of sufficient fame or reputation that when the defendant's mark is used on its goods or services, a connection with the plaintiff would be presumed.

The TTAB has adhered to the *Buffett* test in subsequent false connection cases. *See Hornby*, 87 U.S.P.Q.2d (BNA) at 1424 (citing *In re N. Am. Free Trade Ass'n*, 43 U.S.P.Q.2d (BNA) 1282 (T.T.A.B. 1997); *In re Nuclear Research Corp.*, 16 U.S.P.Q.2d (BNA) 1316 (T.T.A.B. 1990)). In the instant case the Defendant argues that because Donovan has neither alleged nor proved the elements of § 1052(a), the Defendant is entitled to summary judgment in his favor. In response, Donovan claims that the denial of her application for a MAJOR TAYLOR trademark indicates that her intellectual property interests are in conflict with those of the Defendant. She argues that "Bishop admits that the trademark of the name of this legendary individual has value for his products" and alleges that "Bishop has no connection with the individual Major Taylor." Docket No. 45 at 16. According to Donovan, Bishop "never had personal contact with Major Taylor, and he has never made any contract with any member of the Major Taylor family." *Id*. Donovan concludes that "Defendant Bishop admits the factual basis for this false connection claim and his two MAJOR TAYLOR trademark registrations should be cancelled." *Id*.

Unfortunately, Donovan has not shown that Bishop's marks would be recognized by the public as pointing "uniquely and unmistakably" to Major Taylor. *In re Wielinski*, 49 U.S.P.Q.2d (BNA) 1754, 1757 (T.T.A.B. 1998). At this "put up or shut up" moment in the parties' litigation, Donovan's failure to introduce any evidence whatsoever as to this element of her false connection claim dooms this cause of action. *See Schacht*, 175 F.3d at 504. Accordingly, the Defendant's motion for summary judgment is **GRANTED** as to Count III of the Amended

Complaint.

### D. Count IV – Indiana Rights of Publicity statute.

Both parties have moved for summary judgment on Count IV of the Amended Complaint, which seeks damages and an injunction based on Bishop's alleged violation of Indiana's Rights of Publicity Statute, IND. CODE 32-36-1 to -20. The Indiana Rights of Publicity Statute ("the Statute") "applies to an act or event that occurs within Indiana, regardless of a personality's domicile, residence, or citizenship." IND. CODE 32-36-1-1(a). A personality is defined as "a living or deceased natural person whose: (1) name; (2) voice; (3) signature; (4) photograph; (5) image; (6) likeness; (7) distinctive appearance; (8) gesture; or (9) mannerisms; has commercial value." *Id.* 32-36-1-6. The right of publicity is a personality's property interest in his or her "(1) name; (2) voice; (3) signature; (4) photograph; (5) image; (6) likeness; (7) distinctive appearance; (8) gesture; or (9) mannerisms." *Id*. 32-36-1-7. According to the Statute,

> [a] person may not use an aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime or for one hundred (100) years after the date of the personality's death without having obtained previous written consent from a person specified in section 17 of this chapter.

IND. CODE 32-36-1-8(a). Section 17 explains who can exercise the rights and remedies of the Statute as well as who can consent to use of a personality's right of publicity. *See id*. 32-36-1-17. In the instant case, Donovan claims to be "a person to whom the personality's recognized rights are transferred under section 18 of this chapter," *id*. 32-36-1-17(b), because she "possesses a total of not less than one-half (½) interest of the personality's recognized rights." *Id*. 32-36-1-18(a).

The gist of Donovan's argument is that she satisfies all of the prerequisites of the Statute and, because Bishop has admitted that he "sold products in Indiana in conjunction with the

9

Major Taylor name," he has violated the Statute. Docket No. 37 at 8.

In his own motion for summary judgment, Bishop argues that the Statute does not apply for two reasons. First, Bishop claims that because Major Taylor died in Illinois and was apparently domiciled there at the time of his death, Illinois substantive law should apply. This argument is unsuccessful because the Statute states that it applies to acts or events that occur in Indiana "*regardless* of a personality's domicile, residence, or citizenship." IND. CODE 32-36-1-1(a) (emphasis added). Bishop does not object to Donovan's statement that he sold products bearing Major Taylor's name in Indiana. That is the offensive act. The fact that Major Taylor died elsewhere is, according to the Statute, unimportant. Bishop's second argument – that Major Taylor could not transfer "rights . . . created by future legislation in a state in which he was not domiciled," Docket No. 43 at 11 – is equally unavailing. Although Indiana case law regarding the Statute is sparse, there appears to be no question that the Statute applies retroactively and protects the rights of personalities who died before the statute took effect. *See Phillips v. Scalf*, 778 N.E.2d 480 (Ind. Ct. App. 2002) (applying the Statute to John Dillinger, who died in 1934). Accordingly, Bishop's motion for summary judgment is **DENIED** as to Count IV of the Amended Complaint. Because the undisputed evidence establishes that Bishop violated the Statute, Donovan's motion for summary judgment is **GRANTED** as to Count IV of the Amended Complaint.

      E.      **Count V – Cancellation based on fraud in declaration of use.**

Count V alleges that Bishop committed fraud when, in his application for the '896 mark, he declared that, as of 1995, his trademark was used in connection with "Bicycles, Bicycle Equipment, Bicycle Clothing, Shoes, & Apparel, Bicycle Facilities & Velodromes, Bicycle

Competitions, Bicycle racing/club team name(s)." Amend. Compl. ¶ 27. According to Donovan, "Defendant Bishop admitted . . . that bicycles were not offered for sale in conjunction with a Major Taylor trademark until 2002." *Id*. ¶ 29. Further, Bishop "admitted that Bicycle equipment was never sold in conjunction with a Major Taylor trademark" and "shoes were never offered for sale in conjunction with the Major Taylor Trademark until 2005." *Id*. Therefore, Donovan alleges that the '896 mark should be cancelled because Bishop's declaration of use was fraudulent.

In addition, Donovan claims that in his application for the '247 mark, Bishop fraudulently declared that the mark was "used in connection with . . . Financial and insurance underwriting services pertaining to Fund Raising Associations, Foundations, Charitable not for profit organizations Covering activities held within the normal scope of operations for these organizations, namely, fundraisers" as of June 1, 2002. *Id*. ¶ 30. Donovan alleges that Bishop "has **never** provided insurance underwriting services to any client" so his statements in the declaration of use were fraudulent. *Id*. Accordingly, Donovan claims that the '247 mark should also be cancelled.

As the Court previously noted, "'[f]raud in procuring a trademark registration . . . occurs when an applicant knowingly makes false, material representations of fact in connection with his application.'" *Bose*, 580 F.3d at 1243 (quoting *Torres*, 808 F.2d at 48). An applicant is only liable for fraud if he or she makes knowingly inaccurate or knowingly misleading statements. "[A]bsent the requisite intent to mislead . . . even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation." *Id*. "[T]here is 'a material legal distinction between a false representation and a fraudulent one, the latter involving an intent to

11

deceive, whereas the former may be occasioned by a misunderstanding, an inadvertence, a mere negligent omission, or the like.'" *Id*. (quoting *Kemin*, 192 U.S.P.Q. (BNA) at 329). "In other words, deception must be willful to constitute fraud." *Id*. Negligence, even gross negligence, is simply not enough. *Id*. at 1244.

In the instant case, nothing in the record establishes that Bishop acted with willful intent to deceive the TTAB. Because Donovan has not shown that Bishop's statements were *knowingly* inaccurate, she has not satisfied the stringent *Bose* standard. Accordingly, her motion for summary judgment is **DENIED** as to Count V of the Amended Complaint.

**F,     Count VI – Cancellation based on abandonment.**

The sixth and final count of Donovan's Amended Complaint alleges that Bishop's trademarks should be cancelled because they were abandoned. The Lanham Act states:

> A mark shall be deemed to be 'abandoned' if . . . its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

15 U.S.C. § 1127.

According to Donovan, the '896 mark and the '247 mark both "register the same word-design trademark diagram" and "Bishop admitted . . . that he stopped using the trademark in the form as registered in 2002 or 2003." Docket No. 78 at 6. Then, in 2009, Donovan claims that Bishop signed a Declaration of Continuing Use with respect to the '247 mark, which indicates that the registration is "no longer in use and a new trademark has been adopted." *Id*. Therefore, she alleges that both the '896 and the '247 marks should be cancelled for abandonment.

In response, Bishop avers that he "has continued to use the MAJOR TAYLOR word

12

mark" and "[h]e has never intended to stop using his marks." Docket No. 93 Ex. 4 at 7-8. These assertions, coupled with Bishop's affidavit, which states that he has "been using the MAJOR TAYLOR mark beyond 2002 and 2003 to present," Docket No. 93 Ex. 1 ¶ 20, by selling products through his website, creates an issue of material fact as to abandonment. Accordingly, Donovan's motion for summary judgment is **DENIED** as to Count VI of the Amended Complaint.

## CONCLUSION

For the foregoing reasons the Plaintiff's First Motion for Partial Summary Judgment (Docket No. 36) is **GRANTED**. The Defendant's Motion for Summary Judgment (Docket No. 42) is **GRANTED IN PART AND DENIED IN PART**. The Plaintiff's Second Motion for Partial Summary Judgment (Docket No. 77) is **DENIED**.

SO ORDERED: 10/14/2010

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

David H.E. Bursik
Attorney at Law
dheb@bursik.com

Jonathan L. Faber
McNelly Stephenson Thopy & Harrold
jlfaber@msth.com

Gregory P. Gadson
Lee Cossell Kuehn & Love LLP
ggadson@nleelaw.com

Cherry Malichi
Lee Cossell Kuehn & Love LLP
cmalichi@nleelaw.com

J. Lee McNeely
McNeely Stephenson Thopy & Harrold
jlmcneely@msth.com